# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. CRAIG CUNNINGHAM on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>1. PEOPLES BANK AND TRUST COMPANY<br><br>    Defendants. | :<br>:<br>:<br>:   Case No. CIV-17-237-HE<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff Craig Cunningham ("Mr. Cunningham") ("Plaintiff") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Peoples Bank and Trust Company ("Peoples Bank") hired a third party, Reverse Live Transfers ("RLT"), who commissioned a telemarketing call to a cellular telephone number of Mr. Cunningham for the purposes of advertising their goods and services, using an automated dialing system, which is prohibited by the TCPA.

3. RLT commissioned these calls because of an agreement with Peoples Bank, who hired RLT to generate leads for reverse mortgages through telemarketing.

4. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Craig Cunningham is a resident of the state of Tennessee.

7. Defendant Peoples Bank and Trust Company is an Oklahoma corporation that has its principal office in Edmond, OK, and conducts business in this District. The Defendant has a registered agent of the Secretary of State, 421 NW 13th St, Suite 210, Oklahoma City, OK 73103.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to the claim occurred in this District, including the hiring of RLT to generate leads through telemarketing.

**The Telephone Consumer Protection Act**

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules*

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

15.     Peoples Bank is a member FDIC bank.

16.     Peoples Bank offers refinancing and "reverse mortgage" products.

17.     To generate new clients, Peoples Bank relies on telemarketing.

18.     One of Peoples Bank's new strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") and/or pre-recorded messages to solicit potential customers.

19.     However, in some instances, Peoples Bank does not make the calls themselves, instead they rely on third party lead generators.

20. Peoples Bank does this so they do not incur the expense and spend the time generating their own telemarketing leads, and instead only pay companies who deliver the leads directly to their telephone representatives. This way, thousands of automated calls can be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to select individuals.

21. As such, the burden and inconvenience of unwanted calls is shifted from Peoples Bank to the public, and the putative class of individuals that the Plaintiff seeks to represent.

Call to Mr. Cunningham

22. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

23. Mr. Cunningham's telephone number, (615) 348-XXXX, is assigned to a cellular telephone service.

24. Due to the contract with People's Bank, RLT commissioned an automated telemarketing call to him on January 31, 2017.

25. When the call was answered, there was a lengthy pause and a click, which indicated to the Plaintiff that the call was made using an ATDS.

26. Further indicating that the call was made using an ATDS was the (1) geographic location between the Plaintiff and the Defendant and (2) the generic and scripted telemarketing pitch that the Plaintiff received on the call.

27. Both of these factors support that the calls were made *en masse*, using automated equipment.

28.     Following the lengthy pause and extended silence, RLT gathered generic information about Mr. Cunningham to see if he would meet parameters supplied by Peoples Bank.

29.     After these initial questions were asked, RLT and Peoples Bank used their shared phone system to transfer Mr. Cunningham to Peoples Bank, who attempted to complete the "reverse mortgage" sale.

30.     The Peoples Bank representative gave a phone number for a call back, if the phone disconnected, of 888-760-1414.

31.     That is a phone number for Peoples Bank.

32.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

33.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the putative class.

Peoples Bank's Liability and its Arrangement with RLT

34.     The Federal Communication Commission has instructed that sellers such as Peoples Bank may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically

places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

35. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

36. In fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

38.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

39.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

40.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

41.     Peoples Bank is directly liable for the RLT telemarketing calls because it actively participated in those calls through guidelines it directed RLT to follow.

42. Peoples Bank is also directly liable for the RLT telemarketing calls because it actively participated in the calls by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control", when it allowed RLT access to its telemarketing calling system because RLT was able to automatically transfer the Plaintiff to a Peoples Bank representative during the call.

43. Peoples Bank knowingly and actively accepted this business, which originated through the illegal telemarketing calls from RLT. Indeed, Peoples Bank employees marketed its products and services to Plaintiff on the call to the Plaintiff.

44. Peoples Bank maintains interim control over its RLT's actions as to telemarketing and other activities by directing the content of their agents' advertising as well as dictating the parameters for potential prospects that they would accept.

45. Peoples Bank knew (or reasonably should have known) that RLT was violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts "warm transfer" calls from lead generators would, and indeed *must*, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

46. By engaging RLT to make calls on behalf of its agents to generate new business, Peoples Bank "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

47.     Similarly, by commissioning these automated calls, RLT "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Peoples Bank, as described in the Restatement (Third) of Agency.  RLT is an agent of Peoples Bank.

48.     Furthermore, Peoples Bank cloaked RLT with apparent authority to telemarket on its behalf by accepting and marketing to consumers whom RLT had called.

49.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

## Class Action Allegations

50.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

51.     The classes of persons Plaintiff proposes to represent are tentatively defined as:

> All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

10

52. Excluded from the classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

53. The class as defined above is identifiable through phone records and phone number databases.

54. The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

55. Plaintiff is a member of the proposed class.

56. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendant placed calls using an automatic telephone dialing system;

    c. Whether the Defendant is vicariously liable for the conduct of RLT;

    d. Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

    e. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

57. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Peoples Bank and are based on the same legal and remedial theories.

58. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

59. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

60. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

61. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

62. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

## Count One:
## Violation of the TCPA's Automated Calling provisions

63. Plaintiff Cunningham incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The foregoing acts and omissions of Peoples Bank and/or its affiliates, agents, and/or other persons or entities acting on Peoples Bank' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

65. As a result of Peoples Bank's and/or its affiliates, agents, and/or other persons or entities acting on Peoples Bank' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

66. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Peoples Bank and/or its affiliates, agents, and/or other persons or entities acting on Peoples Bank's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

67. The Defendant's violations were negligent and/or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Peoples Bank and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Peoples Bank and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

By:   /s/ Paul Catalano
     David Humphreys, OBA # 12346
     Luke J. Wallace, OBA # 16070
     Paul Catalano, OBA # 22095
     **HUMPHREYS WALLACE HUMPHREYS, P.C.**
     9202 South Toledo Avenue
     Tulsa, Oklahoma 74137
     Telephone: 918-747-5300
     Fax: 918-747-5311
     david@hwh-law.com
     luke@hwh-law.com
     paul@hwh-law.com

and

Anthony I. Paronich, *Pro Hac Vice Pending*
Edward A. Broderick, *Pro Hac Vice Pending*
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts  02110
Telephone: 508-221-1510
Fax: 617-830-0327
anthony@broderick-law.com
ted@broderick-law.com

and

Matthew P. McCue, *Pro Hac Vice Pending*
Law Office of Matthew P. McCue
1 South Avenue, 3rd Floor
Natick, Massachusetts  01760
Telephone: 508-655-1415
Fax: 508-319-3077
mmccue@massattorneys.net
**ATTORNEYS FOR PLAINTIFFS**